UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FABIO NIEVES,

    Petitioner,

v.                                                      CASE NO. 6:08-cv-1282-Orl-31DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 9). Petitioner filed a reply and an amended reply to the response (Doc. Nos. 12 & 14).

Petitioner alleges one claim for relief in his petition, newly discovered evidence demonstrates his actual innocence.

*I.    Procedural History*

Petitioner was charged by indictment with one count of first degree murder. A jury trial was conducted in May of 1999, after which Petitioner was found guilty as charged. The state trial court sentenced Petitioner to a term of life imprisonment. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed on July 9, 1999. *See*

*Nieves v. State*, 739 So. 2d 125 (Fla. 5th DCA 1999). Petitioner filed a motion for rehearing, which was denied on August 17, 1999. (App. A at 85.) Petitioner filed a notice to invoke discretionary jurisdiction of the Supreme Court of Florida, which denied the request on January 18, 2000. *Id*. at 88.

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief on January 16, 2002.[1] (App. D at 14.) The state trial court summarily denied the motion without prejudice. *Id*. at 56-57. Petitioner filed a notice of supplemental appellate record and reassertion of motion for post-conviction relief. *Id*. at 58-60. The state trial court summarily denied the Rule 3.850 motion on June 14, 2004. *Id*. at 87-94. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam* on November 2, 2004. *Id*. at 282. Mandate was issued on November 19, 2004. *Id*. at 283.

On November 30, 2006, Petitioner filed a second Rule 3.850 motion, based on newly discovered evidence. (App. E at 15.) The state trial court denied the motion, and Petitioner appealed. The Fifth District Court of Appeal affirmed *per curiam* on May 13, 2008. *Id*. at 154. Mandate was issued on July 7, 2008. *Id*. at 160.

---

[1]This is the filing date under the "mailbox rule." *See Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000) ("[W]e will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if that the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date."). All further references to the filing date of pleadings by Petitioner shall be the filing date under the mailbox rule, unless otherwise noted.

2

## II. Legal Standards

### A. Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a

3

procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor

4

external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### B. *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of

---

[2]In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

6

the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## III. Analysis

Petitioner asserts that newly discovered evidence exculpates him of first degree murder. In support of his claim, Petitioner relies on the affidavits of Joel Rodriguez ("Rodriguez") and Waldemar Viruet ("Viruet"), prison inmates. Specifically, Rodriguez attested on December 14, 2005, that while he was incarcerated at the Orange County Jail between July and September of 1998, Joel Sierra ("Sierra") told him that (1) he saw Petitioner running away from the victim who was lying on the ground, (2) he saw the victim try to get up, and (3) he (Sierra) shot the victim because he thought the victim might shoot Petitioner and the victim appeared to be suffering. *See* Doc. No. 1 at 23-25. According to Rodriguez, Sierra said that he knew Petitioner had been convicted for the murder. *Id.* at 25. Viruet attested on December 17, 2006, that he observed the events surrounding the murder from across the street from the McDonald's where the offense occurred. *Id.* at 27-28. According to Viruet, he recognized Petitioner as one of the guys involved in the fight, and although he could not hear what was said, Viruet saw the victim attack Petitioner, and as they started to fall to the ground, the gun went off. *Id.* at 27. Viruet attested that he saw Petitioner get to his feet and run away after which he observed another man approach the victim, who was rolling around on the ground, and shoot the victim. *Id.* at 28.

7

Respondents assert that Petitioner's claim is procedurally barred from review because it was not raised as a federal claim in the state courts. The record demonstrates that the instant claim was not raised as a federal constitutional claim in the state courts. Petitioner cited only to state cases in support of his claim, and all of his substantive arguments addressed Florida law. Nothing in the claim, therefore, would have alerted the state court to the presence of a federal claim. Thus, this claim was not exhausted and is procedurally barred absent application of one of the exceptions.

In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has not shown the applicability of the fundamental miscarriage of justice exception. To the extent Petitioner relies on the affidavits of Rodriguez and Viruet to establish the application of the fundamental miscarriage of justice exception, the Court concludes that this evidence is not reliable and Petitioner has not demonstrated that it is more likely than not that no reasonable juror would have convicted him given this evidence.

First, both Rodriguez and Viruet, who are inmates, provided Petitioner with statements more than six years after Petitioner's trial. Neither of them notified law enforcement at any point of what they saw on the night of the incident or heard regarding the incident. Moreover, the statements contained in Rodriguez's affidavit that Sierra admitted shooting the victim after Petitioner fled are hearsay statements. For these reasons, the Court cannot find that Petitioner's newly discovered evidence is reliable.

Moreover, even assuming that the newly discovered evidence were reliable, the evidence presented at trial refutes the application of the actual innocence exception. At trial, Todd Wexler ("Wexler") testified that he saw Petitioner shoot the victim four times in rapid succession.[3] (App. B at 339, 360, 365.) Wexler further testified that after Petitioner shot the victim and Petitioner and the others who were near the victim ran away, Wexler immediately walked to the victim. *Id.* at 340, 359. Wexler stated that he heard two shots prior to Petitioner shooting the victim, but Wexler did not indicate that he heard or saw any shots fired after he saw Petitioner shoot the victim. *Id*. at 385, 387.

Bruno Goncalves ("Goncalves") also testified that he saw Petitioner shoot the victim four times in rapid succession. (App. B at 393, 402, 410-11.) Like Wexler, Goncalves testified that he (Goncalves) went to the victim immediately after the victim was shot. *Id*. at 394. Goncalves testified that he heard one gunshot in the McDonald's parking lot prior to the victim being shot, but Goncalves did not indicate that he saw or heard any shots fired after Petitioner shot the victim. *Id*. at 401.

Wexler and Goncalves' testimony that they went to the victim after they saw Petitioner shoot the victim refutes the affidavits of Rodriguez and Viruet wherein they state that another person shot the victim after Petitioner fled. In addition to Wexler and Goncalves testimony, Charles Lopez ("Lopez") testified that he was with Petitioner at the time of the incident and that Petitioner told him after they left the scene of the offense that

---

[3]Wexler testified that he did not identify Petitioner as the shooter on the date of the incident but identified him a few days later after he had seen a news report on the incident in which Petitioner was identified as a suspect.

9

he "bucked that nigger" and made three hand motions in conjunction with the statement. *Id.* at 433. Lopez stated that Petitioner told him that the victim said "au" three times while Petitioner was shooting him. *Id.* at 435. Additionally, Detective Linnert testified that Petitioner admitted that he shot the victim in self defense three times while the victim was on the ground and was kicking Petitioner's legs. Finally, the evidence established that the bullet casings found around or in close proximity to the victim were from Petitioner's 9 millimeter gun. For all of these reasons, the Court concludes that Petitioner has not established the applicability of the manifest miscarriage of justice exception to overcome the procedural default bar, and this claim is procedurally barred.

Furthermore, the Court notes that a claim of actual innocence based on newly discovered evidence is not cognizable in habeas proceedings because federal habeas relief is designed to rectify constitutional violations, rather than factual errors. *See Herrera v. Collins*, 506 U.S. 390, 390-91 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal proceedings."); *Townsend v. Sain*, 372 U.S. 293 (1963) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not ground for relief on federal habeas corpus."); *Jordan v. Secretary, Dept. of Corrections*, 485 F.3d 1351, 1356 (11th Cir. 2007) ("For what it is worth, our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases."); *Drake v. Francis*, 727 F.2d 990, 993 (11th Cir. 1984) ("In order for a claim of newly discovered evidence to justify

10

habeas review, the evidence must bear on the constitutionality of the defendant's conviction."). Petitioner did not assert in the state court that a constitutional violation occurred in the course of his trial. Petitioner summarily asserts in his memorandum in support of the instant habeas petition that his Sixth and Fourteenth Amendment rights "to a full and fair trial and/or postconviction review was denied by the state court's failure to consider the new evidence of innocence in state postconviction proceedings against the evidence of guilt by conducting an evidentiary hearing in the state postconviction proceedings." (Doc. No. 4 at 8.) To the extent Petitioner has alleged a constitutional violation occurred in the state postconviction proceeding, the Court notes that "[a] habeas petition must allege that the petitioner's detention violates the constitution, a federal statute, or a treaty. . . . [A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989).

In *Spradley v. Dugger*, 825 F.2d 1566 (11th Cir. 1987), the petitioner argued that the state trial court violated his due process rights when it denied his Rule 3.850 motion because it did not conduct an evidentiary hearing and because its opinion denying relief failed to attach those portions of the record on which it relied. The Eleventh Circuit Court of Appeals held that the state trial court's alleged errors in the Rule 3.850 proceedings did not undermine the validity of the petitioner's conviction; therefore, the claim went to issues unrelated to the cause of the petitioner's detention, and it did not state a basis for habeas relief. *Id.* at 1567; *see also Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir. 1984) ("Even where

11

there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself.") (quotation omitted) (citation omitted). Petitioner alleges error in the state post-conviction review process which is not addressable through the instant habeas corpus proceeding. Thus, even if the claim were not procedurally barred, it is not cognizable.

Finally, even assuming that this claim was not procedurally barred and was cognizable, the claim would be subject to denial pursuant to § 2254(d). The state trial court denied relief on Petitioner's claim of newly discovered evidence. (App. E at 85-88.) In so ruling, the state court reasoned that Rodriguez's testimony would not have made a difference in the outcome of the trial because:

> the medical examiner could not determine the caliber of the bullet that caused the victim's fatal wound to the heart, but he never indicated that he could determine the caliber of any other bullet that struck the victim. Furthermore, Rodriguez does not mention the caliber of the bullet or even the type of gun Sierra said he used. Finally, while spent casings matching Defendant's 9mm pistol were found near the victim's body, the .45 caliber casing was found in a different area. . . .
>
> Furthermore, Defendant cannot establish that Rodriguez's hearsay testimony regarding Sierra's purported confession would even be admissible. . . .
>
> Finally, the victim received another bullet wound that would have probably been fatal, *i.e.*, a bullet pierced his right lung and caused internal bleeding into the chest cavity. Even if Defendant could offer conclusive proof that there was a second shooter and that he himself did not fire the fatal shot, he still could have been convicted of first degree murder as a principal. . . .

*Id*. at 86-87 (citations omitted). As to Viruet's testimony, the state court reasoned:

> [although] Viruet's testimony would presumably corroborate Sierra's confession . . . it would not change the fact that Defendant could still have been convicted of first-degree murder as a principal. Furthermore, there is no reasonable probability that it would support a self-defense theory. It would be inconsistent with Defendant's own statement that the victim was lying on his back on the pavement when Defendant fired three shots at him. It would also be inconsistent with the testimony of eyewitnesses Joseph Wexler and Bruno Goncalves, who asserted that Defendant walked over and shot the victim after others who had been fighting with him had caused him to end up on the ground.

*Id*. at 88 (citations omitted).

Upon review of the record, the Court concludes that Petitioner has failed to demonstrate by clear and convincing evidence that the state court's determination is unreasonable in light of the evidence presented. Moreover, Petitioner has not demonstrated that the state court's determination is either contrary to, or an unreasonable application of, federal law. Accordingly, this claim is subject to denial pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Fabio Nieves is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 20th day of August, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sc 8/20
Fabio Nieves
Counsel of Record